IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                              Criminal Case No.: 1:20-CR-66
                                                                (JUDGE KEELEY)

JAMES JOSHUA HARDESTY,

        Defendant.

## REPORT AND RECOMMENDATION RECOMMENDING THAT DEFENDANT TAYLOR WASHINGTON'S MOTION TO SUPPRESS BE DENIED

Presently pending before the undersigned Magistrate Judge is Defendant James Joshua Hardesty's ("Defendant") Motion to Suppress Physical Evidence [ECF No. 20], filed on November 16, 2020. By Order dated November 17, 2020 [ECF No. 21], United States District Judge Irene M. Keeley referred the motion to the undersigned for conducting a hearing and entering a report and recommendation as to disposition of the motion.

The undersigned also is in receipt of the Government's Response to Defendant's Motion and the exhibits attached thereto, filed on November 23, 2020 [ECF No. 23]. After a continuance related to the COVID-19 pandemic, the undersigned conducted a hearing on Defendant's motion on December 21, 2020, at which the Court heard witness testimony, accepted exhibits into evidence, and heard the argument of counsel for both Defendant and the Government.

Based on a detailed review of Defendant's Motion [ECF No. 20], the Government's Response and attached exhibits [ECF No. 23], the exhibits introduced into evidence at the hearing on Defendant's motion, and the testimony given by witnesses and oral argument of counsel offered at said hearing, the undersigned **RECOMMENDS** that Defendant's motion be **DENIED** as set forth herein.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant stands accused in a single-count indictment which a Grand Jury returned against him on October 7, 2020. [ECF No. 1]. Defendant is charged in the Indictment with the offense of Unlawful Possession of Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

Defendant was detained by the Fairmont, West Virginia Police Department ("FPD") at approximately 6:30 p.m. on March 10, 2020. Defendant had parked his motorcycle near an apartment building on Floral Avenue in Fairmont and was present nearby. An observer called Marion County, West Virginia 911 ("Marion County 911") to report that a person, later identified as Defendant, was acting in a concerning manner – as if he were having a seizure or overdosing. BPD Officer Justin Wheeler ("Officer Wheeler") responded to the call and interacted with Defendant. In so doing, Officer Wheeler saw a knife in a sheath on Defendant's belt. Officer Wheeler asked if he could remove the knife, and Defendant agreed. When Officer Wheeler removed the knife, he saw the butt of a handgun protruding from Defendant's jacket pocket. Officer Wheeler also removed the firearm, and upon further inquiry of dispatch, Officer Wheeler learned that Defendant had a prior felony conviction and thus was prohibited from possessing a firearm.

In his motion to suppress, Defendant argues that Officer Wheeler did not have reasonable, articulable suspicion to detain him. Thus, according to Defendant, any evidence later obtained by law enforcement pursuant to detention – here, the firearm – must be suppressed. The Government, on the other hand, opposes Defendant's motion, arguing that Officer Wheeler had reasonable, articulable suspicion to detain Defendant such that the evidence concerning the firearm is

admissible. The issue before the Court, then, is rather narrow – whether there was reasonable, articulable suspicion under the circumstances to detain Defendant.

## II. SUMMARY OF TESTIMONY AND EVIDENCE

During the aforementioned suppression hearing on November 12, 2020, the Court heard sworn testimony from the following witnesses: (1) Officer Wheeler and (2) Defendant himself.

At the suppression hearing, the Court also received into evidence the following: (1) Government's Exhibit 1, the CFS Command Log of the incident from Marion County 911 [ECF No. 32-1], (2) Government's Exhibit 2, a photograph of the area in which the incident occurred [ECF No. 32-2], (3) Government's Exhibit 3, namely, audio recordings of the 911 call and radio communication between Marion County 911 and Officer Wheeler [ECF No. 32-3], (4) Government's Exhibit 4, Officer Wheeler's written incident report [ECF No. 32-4], and (5) Defendant's Exhibit 1, a printout of a mugshot of Defendant. [ECF No. 32-5].

According to Defendant's testimony at the suppression hearing[1], he is a longtime resident of Marion County. [9:47:40 to 9:47:45]. He is a tattoo artist by vocation. [9:47:55 to 9:48:01]. As for the events prompting this matter, he was at the location which was the subject of the 911 call while en route to a job interview in Morgantown. [9:50:20 to 9:50:26]. His transportation at the time was a motorcycle. [9:50:30 to 9:51:06]. The front tire of the motorcycle needed maintenance, and Defendant was at the location waiting on a friend who had tools for performing the maintenance. Id. Defendant testified he had been waiting upwards of 30 minutes. [9:53:35 to 9:53:40]. Defendant testified that he was not under the influence of drugs, had not ingested drugs

---

[1] The citations here to times in brackets correspond to the times of the Court's archived audio recording of the suppression hearing on December 21, 2020, which is located on the platform of the Court's intranet site for FTR recordings.

earlier in the day, did not possess drugs on his person, and was not having a medical issue. [9:53:42 to 9:54:02].

By way of further background and context, Officer Wheeler testified that he encountered Defendant on March 10, 2020 in response to a 911 call. [9:05:00 to 9:05:25]. The call was placed at approximately 6:25 p.m. and Officer Wheeler was on the scene at approximately 6:31 p.m. [9:08:50 to 9:09:26]. The call concerned a person located on Floral Avenue in Fairmont who possibly was under the influence of an illicit substance. [9:05:00 to 9:05:25]. The description of the person in question was that of a male wearing a black jacket and blue jeans, possibly wearing a hat. [9:05:32 to 9:05:55]. The 911 call was for a wellness check or suspicious person check. [9:05:56 to 9:06:02]. According to information relayed to Officer Wheeler by dispatch, the caller reported the man to be leaning against a wall and seeming to be under the influence of drugs or having a medical issue. [9:06:20 to 9:07:25]. The caller's name was not known to Officer Wheeler. [9:05:51 to 9:05:54]. However, the caller's name and location – a woman named Shayla Curry, who was reporting Defendant's behavior in real time during the 911 call, from a position within eyesight of Defendant – were known to dispatch. [ECF No. 32-3]. The radio communication from dispatch to Officer Wheeler indicated that, according to the caller, the man was flailing his arms and head, and could be overdosing or seizing. [ECF No. 32-3].

As Officer Wheeler arrived on the scene, he saw a man whom he did not know previously but who fit the description of the person relayed by dispatch, and who turned out to be Defendant. [9:11:55 to 9:12:08]. Defendant was sitting on a motorcycle; his head was down but bobbing upward, with his eyes closed. [9:12:17 to 9:12:22]. Defendant did not react to Officer Wheeler's arrival until Officer Wheeler approached Defendant on foot and spoke to Defendant first. [9:12:20 to 9:12:44]. Officer Wheeler testified that Defendant did not respond to his verbal inquiry, so he

4

tapped Defendant on the shoulder to awaken him and get his attention. [9:14:15 to 9:14:30]. Officer Wheeler further testified that Defendant's behavior was consistent with someone who is under the influence of drugs. [9:38:02 to 9:38:42].

At this point in their encounter, Officer Wheeler observed a large knife in a sheath on Defendant's belt. [9:14:35 to 9:14:54]. Officer Wheeler asked Defendant if he could remove the knife from Defendant's belt for the safety of them both. [9:14:54 to 9:15:02]. Defendant consented to that request. Id. While removing the knife from Defendant's person, Officer Wheeler saw the butt end of a pistol, hanging slightly out of a pocket in Defendant's jacket. [9:15:04 to 9:15:18]. Officer Wheeler then placed Defendant into handcuffs and removed the firearm from his person. [9:17:40 to 9:17:45]. After removing the firearm, Officer Wheeler communicated to dispatch to provide the firearm's serial number to run a check on it, and to inquire as to Defendant's background to determine if Defendant was the subject of any conviction which would make his possession of the firearm impermissible. [9:17:46 to 9:18:35]. The information from dispatch indicated that the firearm itself was not stolen or the subject of concern in and of itself, but dispatch's information did reveal Defendant to have one prior felony conviction. [9:18:43 to 9:18:56]. Thus, Defendant's possession of a firearm would be impermissible. [9:19:30 to 9:19:41]. Officer Wheeler then arrested Defendant for possessing a firearm while a prohibited person. Id.

Defendant testified that he has tattoos on his face, and that he experiences bias and suspicion as a result. [9:55:33 to 9:57:04].

### III. APPLICABLE LAW

A fundamental principle under the Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Further, seminal caselaw provides

5

that reasonable suspicion arises from circumstances leading to a stop or search. Ornelas v. United States, 517 U.S. 690, 696 (1996). A court is to review the stop or search "from the standpoint of an objectively reasonable police officer." Id. Moreover, permissible are "brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." Navarette v. California, 572 U.S. 393, 396 (2014) (citations and quotations omitted). See Terry v. Ohio, 392 U.S. 1 (1968).

Also well-established is the exclusionary rule – that a court should exclude evidence obtained if an arrest or search is unlawful. See Mapp v. Ohio, 367 U.S. 643 (1961). However, a court should suppress evidence in a criminal matter "only … where its deterrence benefits of exclusion outweigh its substantial social costs." Hudson v. Michigan, 547 U.S. 586, 591 (2006) (citations and quotations omitted).

In a recent decision, the Fourth Circuit noted that, "courts generally presume that a citizen-informant or a victim who discloses his or her identity and basis of knowledge to the police is both reliable and credible." United States v. Kehoe, 893 F.3d 232, 238 (4th Cir. 2018). The Court further stated that "[a]n anonymous caller is 'an unknown, unaccountable informant who neither explained how he knew'" information that he reported "nor supplied any basis for believing he ha[d] inside information." Kehoe, 893 F.3d at 238 (internal citation and quotations omitted). The Court thus concluded that a 911 call was not anonymous when the caller provided "crucial information [allowing] the police to ascertain his identity" and "the basis of his knowledge" such that "the officers were entitled to rely on the information provided by the . . . caller . . . ." Id. at 239.

## IV. LEGAL ISSUES AND ANALYSIS

The question before the Court is whether Officer Wheeler had reasonable, articulable suspicion to detain Defendant, as detention of Defendant led to the officer's discovery of the firearm.

Defendant contends that the facts here do not give rise to reasonable, articulable suspicion and lawful detention. Thus, according to Defendant, evidence (here, the firearm) obtained thereafter as a result must be suppressed. On the contrary, the Government argues that the 911 call and Officer Wheeler's response to it, coupled with the behavior exhibited by Defendant on the scene, is enough to give rise to reasonable, articulable suspicion for the detention.

### A. The 911 call was presumptively reliable and credible.

In this case, Officer Wheeler responded to a 911 call, in which the caller identified herself and her location. The caller described a male in a specific location in relation to a building, specified his clothing, and detailed his behavior which the caller found concerning. There was nothing about the call which appears to have been disingenuous. The caller was identifiable, appears to have been reliable, and responding to an objectively concerning scenario.

Although Officer Wheeler was unaware that the caller to 911 had given her name and location, when he arrived on the scene, he saw a man as described in the 911 call, as conveyed to him by dispatch. The description of the man and his clothing was consistent with the description communicated from dispatch. Further, the description of the man's concerning behavior was consistent with the information from dispatch. In short, the call to 911 was accurate, and verifiable, and precisely relayed what appeared to be an exigent situation.

To the extent which <u>Kehoe</u> establishes the presumption of reasonable, articulable suspicion arising from a 911 call, the undersigned finds that Defendant did not rebut such a presumption

here. In this matter, taking in the totality of the facts and circumstances from testimony and exhibits introduced into evidence, given the consistency between the caller's description of the situation and the facts as observed by Officer Wheeler moments later, the 911 call was reliable and credible.

### B. Officer Wheeler had reasonable, articulable suspicion to detain Defendant.

While he did not testify that he witnessed the presence of drugs, drug activity, or drug paraphernalia, Officer Wheeler need not have necessarily seen such in order to have reasonable, articulable suspicion to detain Defendant. After all, in addition to seeing the person as described in the call, upon arriving only minutes after being dispatched, Officer Wheeler observed Defendant behaving in a way consistent with someone under the influence of drugs or perhaps even overdosing. Arriving in the midst of what may have reasonably been perceived to be a concerning scenario of a person in distress, and taking all of this into account, it would have been surprising, and arguably irresponsible, for Officer Wheeler to do anything but detain Defendant in the fashion in which he did. Officer Wheeler responded in a manner consistent with his training, community expectations, common sense, and the law.

Defendant suggested, by testimony and argument, that his detention here was driven, at least in part, by his facial tattoos. During the hearing before the undersigned, the Court allowed Defendant to remove his face mask for the purpose of viewing his tattoos. The undersigned would note that Defendant's tattoos are concentrated on his neck more than his face, and that the undersigned did not find them to be particularly striking. In any event, in giving a physical description of Defendant, the 911 caller did not note Defendant's tattoos. Defendant's tattoos are not noted in written summaries entered into evidence herein, nor did Officer Wheeler note them in his testimony. In short, nothing other than Defendant's own speculative testimony shows the detention may have been motivated by Defendant's tattoos.

Based upon Officer Wheeler's testimony, which the undersigned finds to be thorough and credible, the undersigned concludes that his actions were customary and sensible given the scenario to which he was dispatched. There is nothing about Officer Wheeler's actions which appears to have been rash or problematically executed. Thus, the undersigned finds that the officer's detention of Defendant was lawful and rational under the circumstances, and that he had reasonable, articulable suspicion to do so.

## IV. CONCLUSION

For the reasons set forth herein, the undersigned **RECOMMENDS** that Defendant's Motion [ECF No. 20] be **DENIED.**

Any party shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of Court is **DIRECTED** to transmit copies of this Report and Recommendation to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted December 30, 2020.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE